```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JAMES WATKINS,<br><br>        Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>        Defendant. | Civil Action No. 1:15-cv-05712<br>                    (RMB)(KMW)<br><br>*Motion returnable 11/21/2016*<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Civil Rule 56.1, Defendant Wells Fargo Bank, N.A., by and through its attorneys, Reed Smith LLP, respectfully submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

                              REED SMITH LLP

                              _____
                              Kellie A. Lavery

Dated:  October 28, 2016

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Wells Fargo produced its records regarding all telephone calls made to the Plaintiff at any telephone number, using an automatic telephone dialing system, including Plaintiff's home phone number (ending -1051); Plaintiff's work phone number (ending -9238); and Plaintiff's cell phone number (ending -0368). *Lavery Cert. Ex. 7.*

2. Plaintiff's Complaint relates only to the calls made to his cell phone number ending -0368. *Complaint, DE 1.*

3. Wells Fargo stipulated for purposes of this litigation that the calls made to Plaintiff's cell phone were made with an automatic telephone dialing system. *4/5/2016 stipulation.*

4. Plaintiff's cell phone is on Mrs. Watkins' AT&T plan. *Lavery Cert. Ex. 1 at 48:25-49:2.*

5. Plaintiff's cell phone is billed to and paid by Mrs. Watkins. *Lavery Cert. Ex. 1 at 49:15-50:4; 52:13-24.*

6. There were 157 calls made to Plaintiff's cell phone using an automatic telephone dialing system, between September 23, 2011 and July 1, 2015. *Lavery Cert. Ex. 7.*

7. The calls made to Plaintiff's cell phone were to collect on his Account. *Complaint, DE-1 ¶11.*

8. Plaintiff's Account is in collections. *Lavery Cert. Ex. 1 at 40:2-7.*

9. Plaintiff cannot remember the last time he made a payment on the Account, and believes he owes $7,000 or $8,000. *Lavery Cert. Ex. 1 at 42:24-43:4.*

**PLAINTIFF'S CREDIT CARD ACCOUNT**

10. On January 14, 2010, Plaintiff James Watkins opened a credit card account, account number ending with -2364 (the "Account") with Wachovia Bank. *Lavery Cert. Ex. 3 at #6; Ex. 1 at 21:7-22:2.*

11. When Plaintiff opened the Account, he provided Wachovia with his cellular phone number. *Lavery Cert., Ex. 3 at #2, 6, 7.*

12. Plaintiff does not deny that he provided his cell phone number to Wachovia. When specifically asked if he ever provided his cell phone number to Wachovia Bank, he testified that he did "not recall." *Lavery Cert. Ex. 1 at 53:14-16.*

13. Plaintiff is not claiming that he revoked consent to be called on his cell phone by Wachovia. *Lavery Cert. Ex. 1 at 54:22-55:3.*

14. Plaintiff received the account agreements for the Account. *Lavery Cert. Ex. 1 at 35:21-36:7.*

**PLAINTIFF'S ACCOUNT WAS TRANSFERRED TO WELLS FARGO**

15. Plaintiff's Account was transferred from Wachovia to Wells Fargo. *Lavery Cert. Ex. 2 at WF-Watkins 013 and 016.*

16. Plaintiff's Account statement for the period 4/5/2010

– 5/7/2010 advised that his "Wachovia credit card account has transferred to Wells Fargo." *Lavery Cert. Ex. 2 at WF-Watkins 013 and 016.*

17. Plaintiff's cell phone number has been on file with Wells Fargo since it acquired Plaintiff's Account from Wachovia. *Lavery Cert. Ex. 3 at #6 and 7.*

18. Plaintiff does not deny that he provided his cell phone number to Wells Fargo. When specifically asked if he ever provided his cell phone number to Wells Fargo, Plaintiff testified "I don't remember." *Lavery Cert. Ex. 1 at 53:17-20.*

**PLAINTIFF'S TESTIMONY REGARDING REVOCATION OF CONSENT**

19. Plaintiff testified that in 2010 or 2011, he told Wells Fargo to stop calling his cell phone. *Lavery Cert. Ex. 1 at 55:4-7; 56:15-17; 59:4-60:6.*

20. Wells Fargo did not make any calls to Plaintiff's cell phone in 2010. *Lavery Cert. Ex. 7 at 365.*

21. Wells Fargo called Plaintiff's cell phone where Plaintiff answered the call only once in 2011. *Lavery Cert, Ex. 7.*

22. On September 26, 2011, Wells Fargo called Plaintiff's cell phone. *Lavery Cert. Ex. 7.*

23. Plaintiff answered the call. *Lavery Cert. Ex. 16.*

24. Wells Fargo verified Plaintiff's information ("VCI"). *Lavery Cert. Ex. 16.*

25. Plaintiff scheduled two payments by phone to be drawn on his checking account and made on October 7, 2011 and October 14, 2011. *Lavery Cert. Ex. 16.*

26. The payments are reflected on Plaintiff's 9/23/2011 – 19/23/2011 Account statement. *Lavery Cert. Ex. 16 (WF-Watkins 78-80)*

27. The authorization for the October 7, 2011 and October 14, 2011 payments are reflected in the archived Account notes. *Lavery Cert. Ex. 16 (WF-Watkins 342)*

28. Plaintiff did not testify about any conversation other than the one that he testified took place in 2010 or 2011 wherein he revoked consent to be called on his cell phone using an automatic telephone dialing system. *Lavery Cert. Ex. 1.*

29. Plaintiff testified that he does not have "any notes or emails or letters or memos" or any other documents about him asking Wells Fargo to stop calling his cell phone. *Lavery Cert. Ex. 1 at 71:21-24.*

**PAULA WATKINS HAS NO KNOWLEDGE OR INFORMATION REGARDING ANY ALLEGED REVOCATION OF CONSENT**

30. Plaintiff's wife, Paula Watkins, testified that she has no idea if Plaintiff ever provided his cell phone number to Wachovia Bank. *Lavery Cert. Ex. 8 at 22:24-25:3; 25:20-26:1.*

31. Mrs. Watkins was not physically present with Plaintiff when he applied for a Wachovia credit card account. *Lavery Cert. Ex. 8 at 24:4-8*

32. Mrs. Watkins has no idea if Plaintiff provided his cell phone number to Wells Fargo Bank. *Lavery Cert. Ex. 8 at 26:8-12.*

33. Plaintiff and Mrs. Watkins have no established pattern, practice, or policy whereby they do not provide their cell phone numbers to creditors in the ordinary course. *Lavery Cert. Ex. 8 at 28:2-13.*

34. Mrs. Watkins has no recollection of any other telephone calling involving Plaintiff and Wells Fargo. *Lavery Cert. Ex. 8 at 46:3-47:24.*

35. There are no documents, notes, emails, or calendars that Mrs. Watkins could look at that would help Mrs. Watkins recall any other conversations between Wells Fargo and Plaintiff. *Lavery Cert. Ex. 8 at 47:25-48:9.*

36. Mrs. Watkins cannot recall Plaintiff ever telling someone who called on his cell phone to call on the landline instead. *Lavery Cert. Ex. 8 at 48:10-14.*

37. Mrs. Watkins has never communicated with Wells Fargo regarding Plaintiff's Account. *Lavery Cert. Ex. 8 at 49:15-22.*

38. Mrs. Watkins has no notes, emails, letters, or doodles about Plaintiff asking Wells Fargo to stop calling his cell phone. *Lavery Cert. Ex. 8 at 42:8-14.*

39. Mrs. Watkins never contacted AT&T to block Wells Fargo from calling Plaintiff's cell phone. *Lavery Cert. Ex. 8 at 42:15-18.*

**2010 ACCOUNT AGREEMENT PROVIDED PLAINTIFF'S CONSENT TO BE CALLED ON HIS CELL PHONE USING AN AUTOMATIC TELEPHONE DIALING SYSTEM**

40. Plaintiff's Account was governed by the cardmember agreement effective October 7, 2010. *Lavery Cert. Ex. 4.*

41. That agreement provides Plaintiff's consent for Wells Fargo to make calls to his cell phone, and states:

> ***Telephone Communication Monitoring and Contacting You.*** *You agree that your telephone communications with us may be monitored and recorded, by our employees or agents, to improve customer service and security. You agree, in order to us to service the Account or to collect any amounts you may owe, that we may from time to time make calls and send text messages to you, using prerecorded/artificial voice messages and/or through the use of an automatic dialing device, at any telephone number associated with your Account, including mobile telephone numbers that could result in charges to you. You also expressly consent to Wells Fargo sending email messages regarding your Account to your email address.*

*Lavery Cert. Ex. 4 at WF-Watkins 263-264 at ¶26.*

42. Plaintiff agreed that his use of the credit card "constitutes acceptance of all terms and conditions in this Agreement." *Lavery Cert. Ex. 4 at WF-Watkins 253.*

**2011 ACCOUNT AGREEMENT PROVIDED PLAINTIFF'S CONSENT TO BE CALLED ON HIS CELL PHONE USING AN AUTOMATIC TELEPHONE DIALING SYSTEM**

43. Plaintiff's Account was governed by the cardmember agreement effective July 1, 2011. *Lavery Cert. Ex. 5.*

44. That agreement provides Plaintiff's consent for Wells Fargo to make calls to his cell phone, and states:

> ***Telephone Communication Monitoring and Contacting You.*** *You agree that your telephone communications with us may be monitored and recorded, by our employees or agents, to improve customer service and security. You agree, in order to us to service the Account or to collect any amounts you may owe, that we may from time to time make calls and send text messages to you, using prerecorded/artificial voice messages and/or through the use of an automatic dialing device, at any telephone number associated with your Account, including mobile telephone numbers that could result in charges to you. You also expressly consent to Wells Fargo sending email messages regarding your Account to your email address.*

*Lavery Cert. Ex. 5 at WF-Watkins 270 at ¶26.*

**PLAINTIFF CONSENTED TO BE CALLED ON HIS CELL PHONE USING AN AUTOMATIC TELEPHONE DIALING SYSTEM DURING A JANUARY 7, 2013 WITH WELLS FARGO**

45. On January 7, 2013, Plaintiff called Wells Fargo and spoke with a Wells Fargo representative in Salt Lake City, Utah. *Lavery Cert. Ex. 14 at 114:8-25.*

46. On January 7, 2013, Plaintiff made a $272.00 payment to the Account. *Lavery Cert. Ex. 11.*

47. Plaintiff made the January 7, 2013 by phone, while speaking with a Wells Fargo representative. *Lavery Cert. Ex. 13 (WF-Watkins 324-325); Lavery Cert. Ex. 14 at 115:12-116:11.*

48. On January 7, 2013, Plaintiff gave consent/opted in for dialer activity on his cell phone. *Lavery Cert. Ex. 12 (WF-Watkins 312).*

49. Wells Fargo's business records reflect the Plaintiff's affirmative opt-in during the January 7, 2013 call. *Lavery Cert. Ex. 12 (WF-Watkins 312).*

50. Wells Fargo's representative testified that in order for Wells Fargo's business record to have been updated to reflect Plaintiff's consent, the Wells Fargo team member would have had to read the cell consent and then click yes after the customer said yes. *Lavery Cert. Ex. 14 at 123:16-124:4.*

**2014 ACCOUNT AGREEMENT PROVIDED PLAINTIFF'S CONSENT TO BE CALLED ON HIS CELL PHONE USING AN AUTOMATIC TELEPHONE DIALING SYSTEM**

51. Plaintiff's Account was governed by the cardmember agreement effective September 2014. *Lavery Cert. Ex. 6.*

52. That agreement provides Plaintiff's consent for Wells Fargo to make calls to his cell phone, and states:

> ***Telephone Communication Monitoring and Contacting You.*** *You agree that your telephone communications with us may be monitored and recorded, by our employees or agents, to improve customer service and security. You agree, in order to us to service the Account or to collect any amounts you may owe, that we may from time to time make calls and send text messages to you,*

> *using prerecorded/artificial voice messages and/or through the use of an automatic dialing device, at any telephone number associated with your Account, including mobile telephone numbers that could result in charges to you. You also expressly consent to Wells Fargo sending email messages regarding your Account to your email address.*

*Lavery Cert. Ex. 6 at WF-Watkins 248.*

### WELLS FARGO'S RECORDS CONFIRM PLAINTIFF'S CONSENT TO BE CALLED ON HIS CELL PHONE USING AN AUTOMATIC TELEPHONE DIALING SYSTEM AS OF FEBRUARY 1, 2015

53. Wells Fargo reviewed cell phone consent on Plaintiff's Account on February 1, 2015, and its FDR business record reflects ""Cell Consent date for 609-332-0368 is the same as the date the credit card account opened." *Lavery Cert. Ex. 9.*

### WELLS FARGO'S BUSINESS RECORDS DO NOT REFLECT ANY REVOCATION OF CONSENT BY PLAINTIFF

54. It is the policy and procedure of Wells Fargo to record if a consumer revoked his consent pursuant to the Telephone Consumer Protection Act. *Lavery Cert. Ex. 14 at 134:25-135:10.*

55. If a consumer has revoked his consent, but Wells Fargo's agents do not report that in the system, it would be a violation of Wells Fargo's policies and procedures. *Lavery Cert. Ex. 14 at 135:11-16.*

56. If a consumer tells Wells Fargo "don't call me on my cell" or "don't call me," Wells Fargo would then cease making

calls to the consumer's cell phone with an automated telephone dialing system. *Lavery Cert. Ex. 14 at 152:10-14.*

57. It is Wells Fargo's policy to honor verbal requests to cease communications to a cell phone. *Lavery Cert. Ex. 14 at 154:15-155:4.*

58. It would be against Wells Fargo's policies and procedures to not heed the consumer's request to stop calling his or her cell phone. *Lavery Cert. Ex. 14 at 155:5-9.*

59. Wells Fargo produced the FDR notes and memos on the Account, WF-Watkins 286-313. *Lavery Cert. Ex. 14 at 53:25-54; 96:3-13*

60. The FDR notes memos on the Account date back to January 19, 2010. *Lavery Cert. Ex. 14 at 98:14-18.*

61. The FDR memos show what has occurred on the Account. *Lavery Cert. Ex. 14 at 55:2-22*

62. The entries on the FDR memos are both manually input and input by the system. *Lavery Cert. Ex. 14 at 56:6-9*

63. The calls made with the automatic telephone dialing system are reflected on the FDR memos as well as the dialer log. *Lavery Cert. Ex. 14 at 74:7-75:4.*

64. Wells Fargo produced the archived Notes on the Account, bates stamped WF-Watkins 314-364. *Lavery Cert. Ex. 14 at 99:2-15-22.*

65. The archived notes on the Account date back to January 22, 2010. *Lavery Cert. Ex. 14 at 99:20-22.*

66. Wells Fargo produced the ECaR notes on the Account, bates stamped WF-Watkins 281-283. *Lavery Cert. Ex. 14 at 60:11-64:18*

67. Wells Fargo provided its audit history of the phone numbers associated with the Account. *Lavery Cert. Ex. 10 (WF-Watkins 285)*

68. The audit history shows if there were any changes or updates with the telephone numbers. *Lavery Cert. Ex. 14 at 88:14-16.*

69. The audit history was updated on February 1, 2015 with the -0368 cell phone number, and it reflects type: cell, quality: good. *Lavery Cert. Ex. 10; Lavery Cert. Ex. 14 at 89:18-90:2.*

70. Wells Fargo's representative testified that this means it is OK to call the Plaintiff on his cell phone. *Lavery Cert. Ex. 14 at 90:3-5.*

71. The audit history also reflects cell consent: yes, with a date of January 14, 2010. *Lavery Cert. Ex. 10.*

72. On February 23, 2011, Plaintiff called Wells Fargo and spoke with a representative to make a payment by phone. *Lavery Cert. Ex. 14 at 103:8-24, referencing WF-Watkins 349-350.*

73. During the February 23, 2011 call, Wells Fargo verified the cell phone number with the Plaintiff. *Lavery Cert. Ex. 14 at 103:6-106:8 referencing WF-Watkins 349-350*.

74. Wells Fargo's business records regarding consent are accurate, and it is a "very serious offense if a team member does not note consent to" the system. *Lavery Cert. Ex. 14 at 150:4-8*.

75. The audit history reflects that consent to call Plaintiff's cell phone was revoked on August 20, 2015. *Lavery Cert. Ex. 10; Lavery Cert. Ex. 14 at 91:13-19*.

**PLAINTIFF WAS A CLASS MEMBER AND OPTED OUT OF A BANK OF AMERICA TCPA CLASS ACTION SETTLEMENT**

76. Plaintiff first heard of the Telephone Consumer Protection Act when he received notice of a class action settlement involving Bank of America. *Lavery Cert. Ex. 1 at 90:20-91:17; 93:19-23*.

77. Plaintiff received notice of the Bank of America TCPA class action before receiving notice of the Wells Fargo TCPA class action. *Lavery Cert. Ex. 1 at 91:21-92:3*.

78. After receiving notice of the Bank of America TCPA class action, Plaintiff received a notice from the Flitter Lorenz law firm, referencing the Bank of America class action, and advising Plaintiff he could opt out. *Lavery Cert. Ex. 1 at 92:4-93:4*.

79. Plaintiff opted out of the Bank of America TCPA class action. *Lavery Cert. Ex. 1 at 94:8-10*.

80. After opting out of the Bank of America TCPA class action, Plaintiff contacted Bank of America about his monetary damages for a TCPA violation. *Lavery Cert. Ex. 1 at 95:17-96:24*.

81. Plaintiff, represented by Flitter Lorenz, was paid a monetary settlement by Bank of America. *Lavery Cert. Ex. 1 at 95:10-97:8*.

82. The amount of the settlement paid by Bank of America to Plaintiff is confidential. *Lavery Cert. Ex. 1 at 95:25-96:7*.

83. Similar to Plaintiff's allegations and testimony in this case, Plaintiff had a conversation where he told Bank of America not to call him. *Lavery Cert. Ex. 1 at 98:21-24*.

**PLAINTIFF WAS A CLASS MEMBER AND OPTED OUT OF THE <u>FRANKLIN V. WELLS FARGO</u> TCPA CLASS ACTION SETTLEMENT**

84. Plaintiff, as a member of the class in <u>Franklin v. Wells Fargo Bank, N.A.</u>, No. 3:14-cv-02349-MMA-BGS, the United States District Court for the Southern District of California received notice of the <u>Franklin</u> settlement. *Lavery Cert. Ex. 1 at 75:10-20*.

85. After receiving notice of the <u>Franklin</u> class action settlement, Plaintiff received a notice from Flitter Lorenz,

advising that he can opt out. *Lavery Cert. Ex. 1 at 82:14-83:25*.

86. Plaintiff opted out of the Franklin class settlement on June 19, 2015. *Lavery Cert. Ex. 1 at 86:21-87:9*.

87. Plaintiff filed this lawsuit against Wells Fargo on July 23, 2015, asserting a claim for violation of the TCPA. *DE-1*.