IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMES WATKINS,<br><br>    Plaintiff,<br><br>        v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Civil No. 15-5712 (RMB/KMW)<br><br>**OPINION** |

APPEARANCES:

Andrew M. Milz, Esq.
Flitter Milz, P.C.
525 Route 73 South, Suite 200
Marlton, New Jersey 08053
    *Attorney for Plaintiff James Watkins*

Kellie A. Lavery, Esq.
Reed Smith, LLP
136 Main Street, Suite 250
Princeton, New Jersey 08543
    *Attorney for Defendant Wells Fargo Bank, N.A.*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the Motion for Summary Judgment [Docket No. 20] by Defendant Wells Fargo, N.A. ("Wells Fargo" or the "Defendant"). Wells Fargo seeks the entry of summary judgment in its favor on all claims asserted against it by Plaintiff James Watkins (the "Plaintiff"). Having considered the parties' submissions, for the reasons set forth herein, the motion will be denied.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On January 14, 2010, Plaintiff opened a credit card account with Wachovia Bank.  Def. SOMF ¶ 10.  It is unclear whether Plaintiff provided his cell phone number to Wachovia Bank as part of his credit card application in January 2010.  Remarkably, Plaintiff's credit card application is absent from the record.  Instead, Defendant relies upon a February 2015 entry in its call logs as evidence that Plaintiff provided his cell phone number when he applied for his credit card.  Lavery Cert. Ex. 9 [Docket No. 20-12].  According to Plaintiff, however, he only gave Wachovia his home phone number in his application.  Pl. Dep. Tr. 45:8-17 [Docket No. 20-4].  He has no recollection of giving his cell phone number to Wachovia.  Id. 54:14-16.

Shortly thereafter, Plaintiff's credit card account was transferred from Wachovia to Wells Fargo.  Def. SOMF ¶ 15.  Plaintiff does not remember ever providing Wells Fargo with his cell phone number.  Pl. Dep. Tr. 53:17-20.  Due to family illness and financial hardships, Plaintiff was unable to timely pay his credit card bills and his account is now in collection.

---

[1] To the extent that the parties agree on particular facts, the Court relies upon Defendant's Statement of Undisputed Material Facts ("Def. SOMF") [Docket No. 20-2] and Plaintiff's Statement of Undisputed Material Facts ("Pl. SOMF") [Docket No. 24-1].  The Court will rely upon the record for disputed facts.

2

Def. SOMF ¶ 8; Pl. Dep. Tr. 40:11-41:6. Plaintiff believes he owes roughly $7,000 to $8,000 on his Wells Fargo credit card account. Def. SOMF ¶ 9.

From January 14, 2010, the date on which Plaintiff opened his credit card account, and September 22, 2011, Wells Fargo called Plaintiff using an automatic telephone dialing system ("ATDS") on his home phone number only. Pl. SOMF ¶ 12. Wells Fargo began calling Plaintiff's cell phone using an ATDS on September 23, 2011. Id. ¶ 13. Between September 23, 2011 and July 1, 2015, in an attempt to collect on his account, Wells Fargo has placed 157 calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS"). Def. SOMF ¶¶ 6, 7. Defendant claims that it had Plaintiff's prior express consent to make such calls and that his consent had never been revoked. Plaintiff, on the other hand, contends that he never gave Wachovia or Wells Fargo his cell phone number and that, to the extent any consent could have been implied, he revoked that consent on multiple occasions.

Specifically, Plaintiff testified that in 2010 or 2011, he received a call from Wells Fargo on his cell phone as he and his wife, Paula Watkins, were about to sit down for dinner. According to Plaintiff, he told the Wells Fargo representative not to call his cell phone and repeatedly asked how Wells Fargo had obtained his cell phone number. Pl. Dep. Tr. 55:4-59:6.

3

Wells Fargo did not place any calls to Plaintiff's cell phone in 2010. Def. SOMF ¶ 20. Plaintiff answered only one incoming call to his cell phone from Wells Fargo in 2011, on September 26, 2011. Def. SOMF ¶¶ 21-23. Although Plaintiff could not recall the specific dates of the calls, he testified that on every occasion he spoke with Wells Fargo, he told Wells Fargo to stop calling him on his cell phone. Pl. Dep. Tr. 65:12-70:23.

Various Wells Fargo Cardmember Agreement and Disclosure Statements provide that account holders consent to being contacted by Wells Fargo using ATDS. Oct. 2010 Agreement ¶ 26, Lavery Cert. Ex. 4 [Docket No. 20-7]; July 2011 Agreement ¶ 26 [Docket No. 20-8]; Sept. 2014 Agreement ¶ 26 [Docket No. 20-9]. Plaintiff, however, notes that there is no evidence in the record that establishes that these particular agreements governed his Wells Fargo account or were sent to him in connection with his account.

Wells Fargo's call log reflects a January 7, 2013 call to Plaintiff. The entry reads: "PRIMARY CELL QUALITY CHANGED FROM CELL – MANUAL ONLY TO CELL PHONE OPT IN BY WATKINS, JAMES E." Lavery Cert. Ex. 12 [Docket No. 20-15]. Candace Cartwright, a collection manager at Wells Fargo, testified that this entry means that "the primary cell quality was changed from cell manual only to cell opt-in by James E. Watkins." Cartwright Dep. Tr. 123:16-20 [Docket No. 25-3]. She further explained

4

that, for such an entry to come about, the Wells Fargo representative "would have had to read the cell consent and then he would have clicked yes after the customer said yes." Id. 123:21-124:4.

Similarly, Wells Fargo's call audit history reflects the notations "cell quality" and "good" in connection with a February 1, 2015 call to Plaintiff's cell phone. Lavery Cert. Ex. 10 [Docket No. 20-13]. A system entry for the February 1, 2015 call states: "Cell Consent date for [Plaintiff's cell phone number] is the same as the date the credit card account opened." Lavery Cert. Ex. 9.

It is Wells Fargo's policy and procedure to record if a consumer revoked consent to be called. Def. SOMF ¶ 54. If a Wells Fargo representative did not record a customer's revocation of consent, the representative would be in breach of Wells Fargo's policies. Id. ¶ 55.

Based upon these facts, on July 23, 2015, Plaintiff filed the instant litigation in federal court, alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") [Docket No. 1]. Wells Fargo's audit history records reflect that Plaintiff revoked consent to be called on his cell phone on August 20, 2015, roughly three weeks after he commenced this litigation. Def. SOMF ¶ 75.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corps., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Moreover, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (citations omitted). Furthermore, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still

6

appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

## III. ANALYSIS

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013) (citing Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012)). "In passing the Act, Congress was animated by 'outrage[] over the proliferation' of prerecorded telemarketing calls to private residences, which consumers regarded as 'an intrusive invasion of privacy' and 'a nuisance.'" Leyse v. Bank of Am. Nat. Ass'n, 804 F.3d 316, 325 (3d Cir. 2015) (quoting Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)-(6), (10), 105 Stat. 2394).

In relevant part, "[t]he [TCPA] prohibits any person, absent the prior express consent of a telephone-call recipient, from 'mak[ing] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a paging service [or] cellular telephone service." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 666-67 (2016), as revised (Feb. 9, 2016) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). The burden of establishing consent is on the defendant creditor. See Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 366 (3d Cir. 2015) (quoting In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C.R. 559, 565 (2008)). Additionally, as a remedial statute, the TCPA

8

"should be construed to benefit consumers." Gager, 727 F.3d at 271.

The TCPA creates a private right of action for violations of the statute and allows a successful plaintiff to recover his actual monetary loss or $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). Where a defendant "willfully or knowingly" violated the TCPA, a court may, in its discretion, award treble damages. 47 U.S.C. § 227(b)(3).[2]

Here, the parties do not dispute that Wells Fargo called Plaintiff's cell phone 157 times using an ATDS between September 23, 2011 and July 1, 2015. Def. SOMF ¶¶ 3, 6. Indeed, Defendant concedes that "[t]hese calls would be violative of the TCPA, unless the autodialed calls were 'made with the prior express consent' of the Plaintiff." Def. Br. at 4 [Docket

---

[2] Although the parties have not addressed the issue of standing, it appears that Plaintiff may only recover damages for calls that "he, and not an answering machine, answered." Leyse v. Bank of Am., 2016 WL 5928683, at *5 (D.N.J. Oct. 11, 2016) (citing Leyse, 804 F.3d at 327 ("[I]t is the actual recipient, intended or not, who suffered the nuisance or invasion of privacy. The burden of proof will, therefore, be on [plaintiff] in the District Court, to demonstrate that he answered the telephone when the robocall was received.")); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation."). The Court need not resolve this issue now.

9

No. 20-1].  As such, the only issues remaining are whether Plaintiff provided prior express consent to be called on his cell phone using an ATDS and, if so, whether that consent was revoked.

**A. Prior Express Consent**

Wells Fargo contends that Plaintiff gave his prior express consent to be called on his cell phone by Wells Fargo using an ATDS on at least three occasions.  First, Wells Fargo claims that Plaintiff provided his cell phone number to Wachovia when he opened his credit card on January 14, 2010.  If true, this would be sufficient to establish prior express consent for purposes of the TCPA.  See 23 F.C.C.R. at 564 ("We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.").

In support, Defendant relies upon its answers to interrogatories and two 2015 system entries.  See Answers to Interrogatories ¶¶ 2, 6, 7 [Docket No. 20-6]; Lavery Cert. Ex. 9; Lavery Cert. Ex. 10.[3]  The Answers to Interrogatories rely

---

[3] Plaintiff argues that Wells Fargo's records cannot be considered by this Court on summary judgment on the grounds of hearsay.  Plaintiff is incorrect.  "[T]he rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial."  Fraternal Order of Police, Lodge 1 v. City of Camden,

10

upon the 2015 system entries. The February 1, 2015 entry states: "Cell Consent date for [Plaintiff's cell phone number] is the same as the date the credit card account opened." Lavery Cert. Ex. 9; see also Lavery Cert. Ex. 10.[4]

Plaintiff vigorously contests that he gave Wachovia or Wells Fargo his cell phone number upon opening his credit card account. In his deposition, Plaintiff testified that he gave Wachovia his home phone number in connection with his credit card application, but that he had no recollection of providing his cell phone number. Pl. Dep. Tr. 45:8-17, 54:14-16. In a certification submitted in connection with his opposition to Defendant's motion for summary judgment, Plaintiff avers that it is has long been his practice not to provide his cell phone number to creditors and to instead provide his home phone

---

842 F.3d 231, 238 (3d Cir. 2016) (emphasis in original) (quoting Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995)). The proponent of the disputed evidence "need only 'explain the admissible form that is anticipated.'" Id. (quoting Fed. R. Civ. P. advisory committee's note to 2010 amendment). Here, Defendant has proffered that these documents are capable of being admissible at trial as business records under Federal Rule of Evidence 803(6). The Court agrees and finds that it may properly consider Wells Fargo's system entries, call logs, and audit history in resolving the motion for summary judgment.

[4] The Court notes that when Ms. Cartwright was questioned regarding these entries, she testified that she did not know where the information came from or why it stated that Plaintiff's cell consent date was the same date the credit card account was opened. Cartwright Dep. Tr. 73:15-25.

number.  Pl. Cert. ¶¶ 18-19 [Docket No. 24-3].[5]  The critical evidence--Plaintiff's credit card application--is conspicuously absent from the summary judgment record.  Based on the record before this Court and given that the burden of establishing consent rests upon Defendant, the Court finds that Plaintiff has raised a genuine dispute of material fact--albeit a slim one--regarding whether he provided Wachovia his cell phone number when he applied for his credit card account in January 2010 and,

---

[5] Defendant attacks Plaintiff's certification as a self-serving affidavit "concocted to fabricate a farcical factual dispute and defeat summary judgment."  Def. Reply Br. at 1-4 [Docket No. 25].  As the Court noted above, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."  Kirleis, 560 F.3d at 161.  "Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact."  Id.  Additionally, the Third Circuit has explained that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."  Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007) (quoting Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004)).  "A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant."  Id. at 253.  Here, however, Plaintiff's certification, insofar as the Court relies upon it in resolving the instant motion, is not inconsistent with his prior sworn testimony.  Moreover, it does not merely regurgitate the pleadings in conclusory fashion.  Rather, Plaintiff's certification merely elaborates on the testimony provided at his deposition and sets forth testimony Plaintiff would likely provide at trial.  Accordingly, the Court will not completely disregard Plaintiff's certification, as requested by Defendant, and will consider the contents of Plaintiff's certification on summary judgment as appropriate.

thus, whether he consented to be called on his cell phone at that time.

Additionally, Defendant refers to three account agreements that provide that customers consent to being called on the phone number provided using an ATDS. See Lavery Cert. Ex. 4; Lavery Cert. Ex. 5; Lavery Cert. Ex. 6. Wells Fargo argues that these agreements govern Plaintiff's account. Plaintiff disputes that Defendant has established that these account agreements governed his account. As Plaintiff correctly argues, there is no evidence in the record establishing that these agreements govern Plaintiff's account or that he was even provided with the account agreements in question. The agreements do not appear to be specific to Plaintiff's account and are not signed by Plaintiff. Resolving all inferences in Plaintiff's favor at this juncture, the Court finds that Defendant has not carried its burden of establishing consent on the basis of the account agreements.

Finally, Defendant contends that Plaintiff provided express consent to be called on his cell phone on three separate calls with Wells Fargo representatives on February 23, 2011, January 7, 2013, and February 1, 2015. To establish consent on these dates, Defendant relies upon its call logs and Ms. Cartwright's deposition testimony interpreting the log entries.

The call log for February 23, 2011 reads: "GENESYS PHONE [Plaintiff's cell phone number] TRANSFER TO PRIMARY CELL." Milz Cert. Ex. H [Docket No. 24-9]. Ms. Cartwright testified that this entry means that the Wells Fargo representative verified Plaintiff's information on this call. Cartwright Dep. Tr. 103:11-105:18. The system entry, however, does not "say anything about contacting [Plaintiff] on his cell phone with an automated telephone dialing system." Id. 105:19-23. Moreover, as Plaintiff argues and Ms. Cartwright conceded, the system entry does not indicate where the cell phone number came from or whether Plaintiff himself provided that number to Wells Fargo. Id. 105:12-18. Indeed, at times, Wells Fargo would capture Plaintiff's phone number using an Automated Number Indicator ("ANI"), a caller identification technology. Id. 101:13-102:4. As Ms. Cartwright testified, Wells Fargo would not consider obtaining a customer's phone number from an ANI to constitute prior express consent for purposes of the TCPA. Id. 102:10-19.

The January 7, 2013 call log entry states: "PRIMARY CELL QUALITY CHANGED FROM CELL – MANUAL ONLY TO CELL PHONE OPT IN BY WATKINS, JAMES E." Lavery Cert. Ex. 12. Ms. Cartwright testified that this entry indicates that "the primary cell quality was changed from cell manual only to cell opt-in by James E. Watkins." Cartwright Dep. Tr. 123:16-20. She further testified that for such an entry to have been generated, the

14

Wells Fargo "team member would have had to read the cell consent [to Plaintiff] and then he would have clicked yes after the customer said yes." Id. 123:21-124:4. This, however, is not reflected in the system entry itself. Id. 124:5-7. Indeed, the entry does not mention Plaintiff's cell phone number, how the number was obtained, or consent to be called on Plaintiff's cell phone using an ATDS. Id. 115:5-11, 124:11-14.

The February 1, 2015 entry states: "Cell Consent date for [Plaintiff's cell phone number] is the same as the date the credit card account opened." Lavery Cert. Ex. 12. As the Court previously noted, Ms. Cartwright testified that she does not know where this information came from. Cartwright Dep. Tr. 73:15-25.

Plaintiff avers in his certification that he has no recollection of Wells Fargo ever reading him a cell consent message or asking him to verify his cell phone number. Pl. Cert. ¶¶ 14, 15. He also certified that, even if he had been asked, he never would have consented to be called on his cell phone by Wells Fargo using an ATDS. Id. ¶¶ 14-17. Moreover, in his deposition, Plaintiff testified that each time he spoke with Wells Fargo, he told them to stop calling his cell phone. Pl. Dep. Tr. 65:12-67:24.

Plaintiff's deposition testimony and sworn certification are sufficient to narrowly raise a genuine dispute of material

fact as to whether he consented to receiving automated calls from Wells Fargo on his cell phone.  While the great weight of the evidence suggests that Plaintiff provided his cell phone number to Wells Fargo at some point in time, this Court must not weigh the evidence on summary judgment.  There are clearly genuine disputes of fact as to whether and, if so, when Plaintiff consented to being called on his cell phone by Wells Fargo using an ATDS.  These questions of fact must be resolved by the jury.  On this record, summary judgment is not appropriate and must be denied.

### B. Revocation of Consent

Even assuming that Defendant carried its burden of establishing that Plaintiff consented at some point to being called on his cell phone by Wells Fargo using an ATDS, Plaintiff is nonetheless permitted to revoke such consent.  Gager, 727 F.3d at 271-72.  Defendant contends that there is no evidence in the record from which a jury could conclude that Plaintiff revoked his consent to be called by Wells Fargo on his cell phone using an ATDS.  Plaintiff, naturally, disagrees and contends that he repeatedly told Wells Fargo to stop calling him on his cell phone, thereby revoking any consent that Wells Fargo may have believed he had previously given.

Plaintiff testified that he received a call from Wells Fargo on his cell phone just as he and his wife were sitting

down for dinner at some point in 2010 or 2011. According to Plaintiff, on this call, he explicitly told the Wells Fargo representative not to call his cell phone and asked how Wells Fargo had obtained the number in the first place. Pl. Dep. Tr. 55:4-59:6. Plaintiff's wife testified that she heard Plaintiff tell the representative not to call his cell phone. Paula Watkins Dep. Tr. 29:1-33:3 [Docket No. 20-11]. Plaintiff only answered one call from Wells Fargo on his cell phone in 2010 or 2011, on September 26, 2011. Def. SOMF ¶¶ 20-22. Plaintiff also testified that every time he spoke with a Wells Fargo representative, he told the representative to stop calling his cell phone. Pl. Dep. Tr. 65:12-67:24. All calls made to Plaintiff on any telephone number, as well as the dates on which Plaintiff was called by Wells Fargo and answered, are documented in Wells Fargo's call logs. Def. SOMF ¶¶ 1, 21-23; Milz Cert. Ex. E [Docket No. 24-6].

Defendant refutes Plaintiff's testimony with its call records, which do not reflect that Plaintiff revoked consent to be called on his cell phone at any time prior to August 20, 2015, even though Wells Fargo's policies and procedures require its representatives to record if a customer revokes consent to be called. Def. SOMF ¶ 54. Failure to document revocation of consent is a violation of Wells Fargo's policies and procedures. Id. ¶ 55. It is also Wells Fargo's policy to honor verbal

17

requests to cease calls to a cell phone. Id. ¶¶ 57-58.[6] Ms. Cartwright testified, however, that errors in documenting revocations of consent happen, albeit rarely. Cartwright Dep. Tr. 150:23-151:3.

While Defendant may use this evidence to contradict and undermine Plaintiff's testimony at trial, it is for the jury at trial--rather than this Court on summary judgment--to evaluate such arguments and determine whether to believe Plaintiff or Defendant. Plaintiff's testimony establishes a genuine dispute of fact as to whether Plaintiff told Wells Fargo to stop calling his cell phone, thereby revoking any consent previously granted. Although Wells Fargo's records do not document that Plaintiff revoked consent, Plaintiff had sufficiently raised a slim issue of fact that must be resolved by the jury.

Resolving all inferences and doubts in favor of Plaintiff, as it must on summary judgment, the Court finds that there are genuine disputes of material fact regarding both consent and

---

[6] Plaintiff contends that Defendant "cynically argues that the Court should recognize the absence of a business record noting revocation of consent, and somehow credit a negative as some sort of proof. . . . This argument is nonsense[.]" Pl. Opp. Br. at 13 [Docket No. 24] (emphasis in original). The Court disagrees with Plaintiff's characterization and notes that the Federal Rules of Evidence provide that the absence of a record of a regularly conducted activity may be admissible to prove that the matter did not occur. Fed. R. Evid. 803(7).

revocation of consent.  For these reasons, Defendant's motion for summary judgment as to Plaintiff's TCPA claim is denied.

**C. Treble Damages**

Defendant also seeks summary judgment on Plaintiff's claim for treble damages.  Under the TCPA, a court may award treble damages "[i]f the court finds that the defendant willfully or knowingly violated" the TCPA.  47 U.S.C. § 227(b)(3).  Wells Fargo contends that the absence of any business records documenting revocation of consent establishes that it could not have willfully or knowingly violated the TCPA.  While the evidence does not appear to support a finding that any TCPA violation by Defendant in this case is willful or knowing--in light of Wells Fargo's policy to record all revocations of consent and the absence of any such record--such a determination at this juncture would be premature and improper.  If the jury were to credit Plaintiff's testimony that he repeatedly told Wells Fargo not to call his cell phone and Wells Fargo nonetheless continued to do so, the jury could find Defendant's conduct to be willful or knowing.  Accordingly, as there are questions of fact regarding both consent and revocation of consent which must be resolved by the jury, the Court denies summary judgment as to Plaintiff's request for treble damages without prejudice to renewing the argument at trial, as appropriate.

**IV. CONCLUSION**

For the reasons set forth above, the Court will deny Defendant's Motion for Summary Judgment. Trial in the above-captioned matter shall commence on September 11, 2017 at 9:00 a.m. in Courtroom 3D, Mitchell H. Cohen Federal Courthouse, 4th and Cooper Streets, Camden, New Jersey. An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: June 2, 2017